JESSE C. McGEE, Judge ad hoc.
This is an appeal from a judgment of the First City Court for the City of New Orleans wherein plaintiff Custom Contract Company was awarded a judgment of $554.-09 representing a balance on open account allegedly due by the said defendant Robert E. Nims.
The facts appear to be that Mr. Lionell Boulmay, president of LeBaron Corporation, contacted Mr. Eric Lobenstein, a partner in the firm of Custom Contract Company, with a view of having Custom Contract Company supply the furnishings for a new cocktail lounge to be operated by Le-Baron Corporation. It further appears that Lobenstein informed Mr. Boulmay that due to his past credit experience with Boulmay he could not permit any type of credit in furnishing the proposed cocktail lounge.
The plaintiff, Custom Contract Company, is engaged in the sale of motel, restaurant and hotel furniture and furnishings.
The defendant here Mr. Robert E. Nims, is engaged in the “coin machine” business, being the president and principal owner of Lucky Coin Machine Company, Inc.
Mr. Boulmay and his LeBaron Corporation had made some financial arrangements *375 with Mr. Robert E. Nims and his Lucky Coin Machine Company, Inc., to borrow some money to buy furnishings and equipment for the proposed new cocktail lounge. On May 4, 19S8, and before the delivery of any part of the furnishings to LeBaron Corporation, Mr. Nims paid to the plaintiff the sum of $1,000.00 by check drawn on Lucky Coin Machine Company, Inc., and a check for a like amount drawn on the same company was paid to the plaintiff on June 23, 1958. The total order delivered to LeBaron Corporation amounted to $2554.09, and after crediting the two $1,000.00 checks, there was a balance of $554.09, being the amount plaintiff was awarded by the trial court.
It is contended by plaintiff that defendant had an active and actual interest in seeing that this cocktail lounge was opened; it would mean a new location for his coin machines and Mr. Nims in order to assist himself in making a business deal, would finance a prospective outlet and take a note for the advances so made. The note was to be credited from time to time by the share of the earnings of the machine allotted to the owner of the locations.
Mr. Eric Lobenstein, a partner and representative of the plaintiff, stated that he was approached by Mr. Boulmay and Mr. Drown, and they wanted certain furnishings for the proposed cocktail lounge, at a cost in the amount of $2,500.00; it was then he informed Mr. Boulmay that his credit limit was exhausted and that he could not extend further credit and Mr. Boulmay replied, “That’s alright, Nims is going to pay for it.” Mr. Lobenstein further testified that he got in touch with the ■defendant Nims and asked him if he was going to pay for it, and that Mr. Nims •said, “I am going to advance him money,” .and Lobenstein then stated, talking to Nims, “I am going to sell it to you and not to LeBaron, both for the protection of you .and myself.” (Tr. 5)
The defendant now denies that he is in any way responsible for the balance of this indebtedness.
■ Here we have Mr. Nims advancing money for the account of LeBaron Corporation, paying the sum of $2,000.00 to the plaintiff here on this account.
It has been held that for business or pecuniary reasons a person may bind himself for payment of the debt of another — make his own obligation the primary, not collateral, obligation, and thereby take the case out of the prohibition laid down in Article 2278 of the LSA-Civil Code. Wallenburg v. Kerry, 16 La.App. 221, 133 So. 823.
The appellant contends that the facts here do not prove that he was the purchaser of the merchandise, and that he only became such by the will of the appel-lee, and only then ex post facto. He argues that three circumstances concur to the perfection of the contract (of sale), to-wit: the thing sold, the price and the consent. LSA-C.C. Art. 2439. In this case the first two circumstances concurred but the consent was lacking. The answer here appears to be that the consent to this transaction was certainly supplied when appellant paid the sum of two thousand dollars on this account.
In Collier v. Brown et al. (1932) 11 La.App. 567, 141 So. 405, a case somewhat similar to this case, the plaintiff, a retail merchant, and the defendant Willard, were in possession of a portable sawmill and moved it on the lands of defendant Brown for the purpose of manufacturing Brown’s timber which had been sold to Willard. Brown and Willard went to plaintiff’s place of business, where Brown introduced Willard to the plaintiff and arrangements were made for Willard to open an account with plaintiff. Mr. Brown told plaintiff to let Mr. Willard have what he needed and he would see that it was paid. This statement made by Brown to plaintiff was corroborated by other witnesses.
The defendants, Willard and Brown were sued as principals. Willard did not answer. Brown admits he was instrumental *376 in inducing plaintiff to extend credit to Willard but contends that he only stood good for purchases of gas and oil to operate the mill.
The weight of the evidence appears to make it certain that there were no restrictions imposed by Brown on the sales to Willard.
The merchandise purchases were first entered on charge slips to Willard and thereafter these purchases were transferred to the ledger and carried into an account against Brown, who kept in touch with the account from time to time, and as Willard desired to do so, made payments thereon by checks or cash to Willard for that purpose, and Brown charging Willard for the advances. This mode of business continued until Brown notified plaintiff to discontinue Willard’s account.
The late Judge R. M. Taliaferro wrote the opinion in the Collier v. Brown et al. case, and he stated:
“Viewed in the light of all the circumstances, Brown’s meaning and intent with regard to Willard’s account cannot be misunderstood. It is equally clear as to whom the credit was really given. If there had been any doubt on these two propositions, Brown has removed same by his own construction of his relationship to plaintiff. He kept in touch with Willard’s dealings with plaintiff, made payments on the account for him, and, when Willard’s business was in such condition as to cause apprehension as to his ability to pay his debts, Brown notified plaintiff to discontinue the account.
“It is our opinion the prohibition of subdivision 3, article 2278, of the Civil Code does not apply in this case. Brown did not become the surety for Willard, nor the guarantor of his account, but became bound as principal with him for the payment of the account. Two persons may be bound as . principals for the same debt, when, as between them, only one in reality should pay it. Watson Bros. v. Jones, 125 La. 249, 51 So. 187.”
The Collier v. Brown case is cited with' approval in Hornsby v. Rives (1941) La.App., 2 So.2d 532.
In the Collier case, Judge Taliaferro also-cites cases from the common law jurisdictions and we quote from page 406 of 141 So. as follows:
“ ‘Where suit is brought against one for go'ods delivered to another, and the statute of frauds is pleaded as a defense, the decisive question is: To whom was the credit given?’ Day v. Adcock, 11 Ala.App. 471, 66 So. 911.”
In view of the foregoing this court is of the opinion that the record and the law fully support the judgment of the trial court and the judgment will be affirmed, the appellant to pay all costs in both courts..
Affirmed.