288 So.2d 697 (1974)
POWELL LUMBER COMPANY, Plaintiff-Appellant,
v.
AFCO CORPORATION, Defendant-Appellee.
No. 4401.
Court of Appeal of Louisiana, Third Circuit.
January 25, 1974.
*698 Provosty and Sadler by William H. deLaunay, Jr., Alexandria, for plaintiff-appellant.
Gist, Methvin & Trimble by James T. Trimble, Jr., Alexandria, for defendant-appellee.
C. A. King, II, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Plaintiff Powell Lumber Company appeals the judgment rejecting its suit against defendant AFCO Corporation based on an open account. We affirm.
Three issues are presented: 1) Is parol evidence admissible to prove the promise to pay the debt of another? 2) Is the trial judge's evaluation of credibility and factual findings relating to the contract terms, manifestly wrong? 3) Is AFCO estopped to deny certain terms of the verbal contract between it and Powell?
Powell, domiciled in Calcasieu Parish, is in the lumber and building supply business. AFCO is domiciled in Rapides Parish, while Architectural Industries, Inc., a principal figure in this litigation, is domiciled in East Baton Rouge Parish. Both manufacture building products.
AFCO and Architectural have a history of interrelated affairs. AFCO instituted proceedings in East Baton Rouge Parish in March 1968 to place Architectural in receivership. When Architectural was placed in receivership Powell lost some $4,000 on an open account owed by Architectural to Powell. A. K. Ammen and W. Ray Frye are stockholders in AFCO and had previously served on the Board of Directors of Architectural. From June 4, 1968 to April 28, 1969, AFCO loaned Architectural over $100,000, for which certificates of indebtedness were issued. These certificates were later assigned to Ammen, Frye, and R. J. Sevill, another AFCO stockholder. Frye, who was also president of AFCO, admitted that AFCO was interested in getting Architectural on its feet financially. Architectural sold products to and purchased products from AFCO.
After Architectural was placed in receivership, AFCO entered into agreements *699 with several of Architectural's material suppliers, including Powell, in which AFCO guaranteed payment of Architectural accounts. In spite of the close relationship proven to exist between AFCO and Architectural, Powell did not plead nor argue at the appellate level that their relationship was such that the corporate nature of one should be disregarded so as to impute its debts to the other. The present litigation concerns the terms of the verbal agreement between Powell and AFCO.
The exact terms of the agreement by which AFCO guaranteed payment to Powell for shipments to Architectural are disputed. Thomas W. Black, manager for Powell's lumber operation, testified as to the nature of Powell's understanding of the agreement. He stated that in late June 1968, the agreement was reached during a telephone conversation with AFCO's president Frye. He recalls no mention by Frye that AFCO would be bound only when it issued a confirming purchase order to Powell. He recalls no procedure worked out with Frye other than the agreement to pay for materials shipped to Architectural.
Powell's salesman John Salzer handled the Architectural account and testified that he was unfamiliar with the confirming purchase order requirement as a prerequisite to sales to Architectural.
AFCO's president Frye testified that Black telephoned him in June of 1968 and Frye confirmed that AFCO was interested in purchasing certain component parts which Architectural was producing; that he told Black that William D. Henard, Jr., general manager of Architectural, and Powell's employee Salzer had worked out an agreement whereby Powell and Architectural would work up an order and arrange terms; that the order would then be sent to AFCO for its consideration; and that if AFCO chose to guarantee payment to Powell, AFCO would issue a purchase order. Frye's testimony as to the nature of the agreement was largely corroborated by J. L. Ford, who at the time of the events in dispute was in personnel and served as executive assistant to Frye.
Henard, general manager of Architectural at the time in question, testified by deposition that the arrangements between Powell and Architectural were worked out between him and Powell's salesman, Salzer. Henard testified that Salzer specifically understood that AFCO would issue a confirming purchase order when it was to be bound.
Between the time of the June 1968 telephone conversation and March, 1969, Powell shipped Architectural some $70,000 worth of materials based on twenty-one orders. AFCO paid the first sixteen bills but refused the last five which totaled $15,068.75. Confirming purchase orders had been issued by AFCO for only the first three orders. The next thirteen shipments were paid for by AFCO, in spite of its failure to issue confirming purchase orders. AFCO did not issue confirming purchase orders and did not pay for the last five shipments all of which were ordered in January through March, 1969.
Henard testified that early in January 1969, he told Salzer that Architectural had to assume sole responsibility for payment for its supplies. Salzer claims that the conversation with Henard was in late January or early February, 1969. He recalls that Henard mentioned some changes in procedure, but understood that AFCO would contact Powell in regard to those changes. Frye testified that he told Henard in January that AFCO would no longer pay for Architectural's supplies. Frye did not inform Black of this matter, but presumed that Henard would contact Powell. Black testified that he was unaware of the discontinuance of AFCO's guarantee until he spoke to Frye on April 7, 1969.
The trial judge, over AFCO's objection, considered the parol evidence relating to a promise to pay the debt of another. The court found that the confirming purchase order requirement was in fact acknowledged by the parties and that this was an *700 essential element of the contract between them. Since the terms of the oral agreement were not followed, AFCO was not held liable. The trial judge also found that Powell was notified of the discontinuance of the guarantee in early January 1969.
The first issue raised by AFCO concerns the admissibility of parol evidence to prove the promise to pay the debt of a third party. LSA-C.C. art. 2278(3) provides that parol evidence should not be received to prove a promise to pay the debt of a third person. This statute is subject to the exception that one may bind himself for the debts of another where his motivation is pecuniary in nature or where the guarantee is made for the extension of credit. Custom Contract Company v. Nims, 145 So.2d 374 (La.App. 4 Cir. 1962); B & B System v. Everett, 34 So.2d 521 (La.App. 2 Cir. 1948).
Here AFCO's promise induced Powell to extend credit to a corporation in receivership. AFCO and Architectural were mutual customers, and AFCO relied on Architectural for production of certain building products needed by AFCO. AFCO had entered into similar arrangements with other suppliers to keep Architectural in business. Three of Architectural's major creditors were AFCO stockholders and two of these had served on Architectural's board of directors. The case comes within the exception to LSA-C.C. art. 2278(3), and the trial judge properly considered parol evidence to establish a promise to pay the debt of a third party.
Powell urges manifest error in the trial court's factual determination that AFCO conditioned its liability upon its issuance of confirming purchase orders. We do not find manifest error in the trial court's acceptance of AFCO's version which was verified by Henard, the only witness not employed by either litigant. The trial court's determination of credibility absent an abuse of discretion, will not be disturbed. Elliott v. Wallace, 251 So.2d 831 (La.App. 3 Cir. 1971).
Since it was not proved that confirming purchase orders were issued by AFCO, Powell cannot recover in contract for the last five shipments. Legal agreements have the effect of law upon the parties. Courts are bound to give such agreements legal effect, according to the intent of the parties. LSA-C.C. art. 1945.
Finally, does the fact that AFCO paid for thirteen consecutive shipments which were ordered without confirming purchase orders estop it from urging the defense that confirming purchase orders were required? Powell did not specifically plead estoppel, nor did it cite authority for this theory. It nevertheless did allude to the actions of AFCO in paying bills which had not been confirmed with purchase orders as a basis for AFCO's liability.
The trial judge's findings of fact preclude the necessity of considering whether estoppel is here applicable. It was found that Salzer was informed by Henard of AFCO's discontinuance of its responsibility for Architectural's bills in early January 1969. The unpaid purchases were made in January, February and March of that year. The finding that Salzer was informed of the discontinuance of credit by AFCO through Henard was one arrived at through an evaluation of credibility, and is supported in the record. We find no manifest error in that determination.
Having been informed before delivery of the last five shipments, through notice to its salesman who handled arrangements with Architectural, Powell had adequate notice that AFCO was not guaranteeing payment of shipments.
The trial court judgment is affirmed at appellant's costs.
Affirmed.