WARD, Judge.
This is an appeal by E.T.L. Corporation from a judgment rendered in a suit on an open account. E.T.L. Corporation sued both Villere Food Group, Inc. and its president, Pierre Villere, to collect the balance due on an account in the name of Villere Food Group, Inc. The debt arose in the course of business when E.T.L. sold paper packaging products and some food supplies to Villere Food Group, Inc. That corporation is now in liquidation and it does not deny the debt or quarrel with the amount due to E.T.L., nor does it appeal the judgment of $29,032.20 in favor of E.T.L. Pierre Villere, who was also made a defendant, answered E.T.L.’s suit and denied his liability for the debt. After trial, the Court rendered judgment in his favor and against E.T.L., rejecting its claims as to him.
E.T.L. claims that Pierre Villere personally guaranteed the claims as surety for the *558 Corporation, which is owned solely by him. E.T.L. does not seek to pierce the corporate veil. Rather, E.T.L. argues that Pierre Vil-lere is a guarantor of the debts of Villere Food Group, Inc.
The Trial Court held that parol evidence was not admissible to prove that Pierre Villere promised to pay the debts of a third person, who in this instance is Villere Food Group, Inc. The Trial Court relied on La. C.C. Art. 2278(3):
2278. Cases where parol evidence not admissible.
Parol evidence shall not be received:

2 * * *
3. To prove any promise to pay the debt of a third person.
^ * * *
E.T.L. Corporation argues that the Trial Court erred because it failed to consider the jurisprudence, particularly Powell Lumber Company v. AFCO Corporation, 288 So.2d 697 (La.App. 3rd Cir.1974), and that he failed to distinguish those situations when the promisor obligates himself to pay the debts of another because he has a pecuniary motivation from those instances when the promisor is acting solely from a gratuitous motive when he promises to pay the debt of another. In the first, the promise may be proved by parol evidence, in the second it may not.
Although both E.T.L. and Pierre Villere argue the admissibility of parol evidence, there are two issues presented in this appeal: First, did Pierre Villere promise to pay the debts of the Corporation and become surety for its debt to E.T.L.? Second, was parol evidence admissible to prove that such a promise was made? We affirm the judgment of the Trial Court, but we do not find it necessary to decide if parol evidence is admissible to prove a promise in this instance because we are convinced no promise was ever made.
A brief description of the facts will show why we believe that Pierre Villere did not promise to guaranty Villere Food Group, Inc.’s debt: Villere Food Group, Inc., doing business as “Wundonuts”, was a start-up corporation formed for the developing a chain of donut shops. Mr. Villere was the president and sole shareholder in the corporation; Mr. Creasman was its vice-president in charge of development. In late 1979, Mr. Creasman contacted Mr. Linn, president of E.T.L., and made preliminary arrangements for the purchase of “Wundonut” monogrammed paper products for the donut shops. Mr. Linn in turn made a preliminary inquiry to packaging manufacturers to determine price and minimum quantity of orders. In November, 1979, Mr. Linn told Mr. Creasman that he wanted a written guaranty that Mr. Villere would be personally responsible for the Corporation’s debts before he ordered supplies from the manufacturers. In December, 1979, Mr. Creas-man wrote a letter to Mr. Linn which was introduced during trial. The relevant parts are:
I would like to express my appreciation for the negotiations and contracts that you are executing on behalf of Villere Food Group, Inc. I look forward to a long and growth oriented business relationship.
It is our understanding and agreement to indemnify you from any financial loss as a result of Wundonut imprinted inventory in your warehouse or on order should Wundonuts discontinue operation. In the event that it becomes necessary, Villere Food Group, Inc. will purchase your entire inventory of Wundonuts imprinted products.
Mr. Villere’s development schedule has precluded him from sending the letter of guarantee prior to this time. He will provide you with his letter of personal guarantee to accompany the corporate guarantee prior to your acceptance of any product on our behalf.
Because Villere Food Group, Inc. wanted to open as soon as possible and because E.T.L. wanted the business, E.T.L. began purchasing supplies from manufacturers of packaging and paper in February of 1980 for resale to Villere Food Group, Inc., including products with the monogram “Wun- *559 donuts on the package, and this in spite of Mr. Linn’s demand for a personal guarantee as a prerequisite to doing business. Although Mr. Linn continued his efforts to obtain Mr. Villere’s written promise to pay the debts of Villere Food Group, Inc., none was ever given.
The account was current for a time, but at the end of several months, there were several unpaid invoices and then in January, 1981, a check to E.T.L. from Villere Food Group, Inc. was returned “NSF”, and E.T.L. sued to collect the entire debt due on the open account.
E.T.L. strenuously argues that the letter from Mr. Creasman to Mr. Linn is proof of a promise by Pierre Villere. We disagree. Although in the letter Mr. Creasman promises that Pierre Villere would make a written promise at some future date, the letter itself cannot be construed as a promise made by Pierre Villere to personally guarantee debts of Villere Food Group, Inc.
The first paragraph of the letter refers to negotiations and contracts of “Villere Food Group, Inc.,” and the second paragraph refers to “Villere Food Group Inc.’s” agreement to pay for any loss incurred by reason of “its operations” while doing business as “Wundonuts”. The third paragraph merely contains a representation by Mr. Creasman that Mr. Pierre Villere “will provide [Mr. Linn] with his letter of personal guarantee.” in the future. Mr. Creasman’s representation cannot be fairly construed to be a promise of Mr. Villere. Nor did the evidence indicate that Mr. Creasman had a mandate to act for Mr. Villere; during trial Mr. Creasman categorically denied that Mr. Villere authorized him to convey Villere’s promise to pay for debts of Villere Food Group, Inc. The letter can, at best, only be construed as a promise by Mr. Creasman that Mr. Villere would in the future convey in writing his guarantee to E.T.L.
Moreover, Mr. Linn did not construe the letter as a promise by Mr. Villere. Mr. Linn continued to seek Mr. Villere’s written promise of guaranty after he received Mr. Creasman’s letter, and he continued his efforts long after E.T.L. began delivering supplies to Wundonuts. We therefore believe that neither the letter nor the testimony in trial establishes that Mr. Villere ever made a promise, either orally or in writing, to pay the debts of Villere Food Group, Inc.
For the above reasons, the judgment of the District Court is affirmed. All cost of trial are to be borne equally by E.T.L. Corporation and Villere Food Group, Inc. All costs of this appeal are to be paid by E.T.L. Corporation.
G. WILLIAM SWIFT, Jr., J. pro tern., concurs.