PLOTKIN, Judge.
Defendant-Appellant, Robert Fau-eheaux, appeals from a granting of a motion for summary judgment in favor of the plaintiff, Whitney National Bank (Whitney), ordering defendant to pay the outstanding balance of a loan made to North Lake Communications, Inc. (NLC) for which the defendant was a surety. We reverse and render a new judgment.
FACTS:
In 1989, NLC borrowed in excess of $275,000 from Whitney. As security for the loan, Faucheaux and two other shareholders in NLC, Charles F. Zewe and Marie Gregson, signed identical acts of “Continuing Guaranty.” The Continuing Guaranties provided as follows:
In Consideration of [Whitney] * * * giving or extending terms of credit, from time to time, one or more times, or having given or extended credit to NORTH LAKE COMMUNICATIONS, INC.[,] hereinafter called debtor, I hereby give this continuing guaranty to [Whitney] * * * for the payment in full, of any indebtedness or liability, direct or contingent, of said debtor * * *; the extent of my obligation however being limited to this amount of ONE HUNDRED AND FIFTY THOUSAND AND NO/100 DOLLARS[,] plus all interest, fees and charges of whatsoever nature and kind owed by the debtor to said Bank, whether due or to become due and whether now existing or hereafter arising * * *
In January 1990, Whitney requested that Faucheaux and the other guarantors reduce the principal amount on the loan. In response, Faucheaux personally paid $150,-000 to Whitney satisfying the full amount of his obligation designated in the continuing guaranty. Whitney applied the entire amount of Faucheaux’s payment as a principal reduction on the loan. Following Fau-cheaux’s payment, Whitney made no further loans to NLC.
*731 On October 25, 1991, Whitney filed a petition for money judgment against NLC and the guarantors on the loan, seeking recovery of the remaining principal of $21,-818.28, plus accrued interest of $2,067.37. Faucheaux pled an affirmative defense of payment based upon his satisfaction of the full amount of his continuing guaranty. Faucheaux and Whitney filed opposing motions for summary judgment.
On September 2, 1992, the trial court granted summary judgment in favor of Whitney. Faucheaux brought this appeal, arguing that the trial court’s judgment is directly at odds with our recent holding in Bergman v. Nicholson Management and Consultants, Inc., 594 So.2d 491 (La.App. 4th Cir.1992), writ den. 600 So.2d 646 (La.1992) and Louisiana Civil Code articles relating to suretyship.
DISCUSSION:
It is undisputed that the defendant was liable for $150,000 on his continuing guaranty to Whitney and that he has tendered and Whitney accepted $150,000. Whitney argues that before the suretyship could terminate the defendant had to notify Whitney that the payment tendered was to release him from his obligation as a surety. Whitney asserts that without this notice commercial creditors would be put in the position of having to guess which payments constituted a payment on the principal of the loan and which payments were meant to extinguish a continuing guaranty. This argument misconstrues the difference between the termination of a suretyship and the extinction of the obligation of the sure-. ty.
Termination of a suretyship is covered in La.C.C. art. 3061 which is a permissive provision which recognizes that the surety may always revoke the suretyship. However, although the surety may terminate the suretyship such termination has no effect on obligations incurred prior to the termination.
A surety may terminate the suretyship by notice to the creditor. The termination does not affect the surety’s liability for obligations incurred by the principal obligor * * * at the time the notice is received * * *
As we recognized in Bergman, “Such written notice * * * would not have affected [defendant’s] liability as guarantor on any commitment then in force. It would have affected his liability only as to future debts incurred by NMC.” Id. at 498; see also First Acadiana Bank v. Bieber, 582 So.2d 1293, 1297 (La.1991).
Certainly, in the case of a termination of the suretyship, notification that the surety-ship is being terminated is necessary. First, it provides a point of reference from which one can determine what obligations the surety has incurred. Second, it places the creditor on notice that the surety will no longer be bound for future obligations of the principal debtor. This allows the creditor to make an informed decision as to whether he will continue to extend funds to the principal debtor.
Extinction of the suretyship is different in that the entire obligation, both past and future, ceases. As we recognized in Bergman, “[a] continuing guaranty remains in full force and effect until revoked by the guarantor, expressly or impliedly, or its effectiveness is extinguished in some other mode recognized by law.” Id. at 497. La.C.C. art. 3058 provides that “[t]he obligations of a surety are extinguished by the different manners in which conventional obligations are extinguished, subject to the following modifications.” The “modifications” referred to in article 3058 concern additions to the general methods in which the specific obligation of suretyship may be terminated or extinguished. However, these “modifications” do not effect the general rule that contracts of suretyship are subject to the general rules covering conventional obligations. One method of extinguishing a conventional obligation is to perform the obligation. La.C.C. art. 1854. Thus, performance of the suretyship is one of the other methods of extinguishment recognized by law.
In the case of an extinguishment of the obligation, there is no need for a prior notification of the intent to extinguish the obligation. First, because the entire obli *732 gation is extinguished there is no need to have a reference point from which to determine what obligations the surety is still liable for. Second, because the creditor is only legally able to collect the amount the surety agreed to pay in the surety agreement, the creditor has no claim that he is being prejudiced when the surety pays the entire amount. Presumably, a prudent lender would not lend funds in excess of the amount that the surety agreed to cover. Furthermore, the simple fact that the surety has paid the entire amount for which he is liable clearly places the creditor on notice that the surety will no longer cover the debts of the principal debtor.
In the instant case, we are dealing with the extinction of the suretyship. Although a suretyship is an accessory obligation and can be liquidated by the extin-guishment of the principal debt, it is also a separate and distinct obligation from the principal debt. Thus, one can also perform the obligation under the suretyship while not affecting the principal debt. In the instant case, defendant was liable under the suretyship for $150,000 while the principal debt exceeded this amount. The defendant tendered the full amount of his liability, thereby completely performing his obligation as defined in the contract of surety. With this performance the obligation of surety was extinguished. This holding is further supported by La.C.C. art. 3067 which states that “[a] surety is not liable for a sum in excess of that expressly stated in his contract.” Thus, once the surety pays this sum the obligation is performed and extinguished. The fact that he did not give notice prior to performing the obligation is immaterial.
In Bergman, 594 So.2d 491 this court addressed similar facts and held that the suretyship was extinguished by [defendant’s] payment of the total sum which he obligated himself to pay on [the principal obligor’s] indebtedness.” Bergman at 498.
Finally, Whitney argues that payment of the full amount of Faucheaux’s guaranty did not discharge his obligation because the continuing guarantee did not limit Faucheaux’s liability to any particular debt instrument, citing First Acadiana Bank, supra. While we agree that Fau-cheaux’s guarantee was not limited to any particular debt instrument, Whitney has again failed to explain why this should subject Faucheaux to a higher obligation than that which he assumed in his continuing guarantee. In support of this argument, Whitney cites First Acadiana Bank, 582 So.2d 1293 as holding that “a continuing guaranty of $100,000 for a total debt of over $350,000 was not discharged by a payment of $124,000.” This statement is substantially incomplete. The $124,000 payment was made from proceeds of the sale of assets of the principal obligor; nothing in First Acadiana suggests that the guarantor made any payments in satisfaction of his $100,000 obligation of surety. In contrast, Faucheaux has satisfied his entire obligation of surety.
As we recognized in Bergman, a continuing guaranty remains in full force and effect until revoked by the guarantor, expressly or impliedly, or its effectiveness is extinguished in some other mode recognized by law. Id. at 497. Like the guarantor in Bergman, Faucheaux extinguished his suretyship by payment of the total sum which he obligated himself to pay on NLC’s indebtedness. Id. at 498. Having extinguished his obligation in a mode recognized by law, Faucheaux is entitled to judgment as a matter of law.
For the foregoing reasons, the trial court’s grant of summary judgment in favor of Whitney is reversed. Faucheaux’s motion for summary judgment is granted. All costs are assessed against the appellee, Whitney.