I,CARAWAY, J.
This dispute arises from two factions claiming authority as the board of directors of a non-profit corporation. One group brought this action in the name of the corporation to evict the other group, who had taken over the corporate facilities and refused to leave the premises. Before this action was completely tried, the defendant/board members filed a separate action in federal court claiming that the actions of the other group had violated their rights under the Federal Tort Claims Act. After an adverse judgment against the defendant/board’s claims in federal court, the trial court granted the plaintiffs motion for res judicata precluding the defendant/board members from claiming further authority over the corporation. An eviction judgment and judgment for declaratory and injunctive relief were entered in favor of plaintiff, which the defendant/board members now appeal. Finding the principles of res judicata and issue preclusion applicable, we affirm the ruling of the trial court.

Facts

This suit centers upon a controversy between two groups of individuals claiming control over Paradise Children’s Home, Inc. (“Paradise”), a non-profit corporation. The seven defendants led by Reverend J.R. Liggins (hereinafter collectively the “Liggins Group”) assert themselves as the board of directors. Five other individuals, Wayne Bing, Arthur Hamlin, Hazel Lev-ingston, Elowise Rabón, and Alan Freeman (hereinafter collectively the “Bing Board”), assert that they are the board of ^directors of Paradise and bring this action in the name of the corporation to evict the Liggins Group from the Paradise facility-
Paradise was incorporated by Reverend Liggins on March 22, 1989, to establish a children’s home in Morehouse Parish, Louisiana for the recovery of first-time youthful offenders. The land for Paradise Village Children’s Home was financed through the State of Louisiana and the facility through the United States Department of Agriculture, Farmer’s Home Administration (“USDA-FHA”).
According to the evidence presented to the district court by the plaintiff, the initial Paradise board of directors were J.R. Lig-gins, President, his wife Zeonia, Vice President, Hazel Levingston, Secretary, and *566 Felicia Norman, Treasurer. By July of 1995, Norman no longer served on the board which had added new members Henry Liggins, Lee Loche, John Andrews and Ivory Smith. The inclusion of the three Liggins family members in the makeup of the board, however, eventually posed problems to the corporation in obtaining financing from USDA-FHA which required that the board be representative of the community. Eventually, the following changes in the board of directors occurred:
October 23, 1995-Zeonia Liggins resigns from the board. Reverend Liggins, Ivory Smith, Hazel Levingston, Henry Lig-gins, John Andrews, Lee Loche and Alan Freeman are re-elected for one year terms.
January 29, 1996-Will Pratt, Melanie Dew and Wayne Bing are elected to the Board for one-year terms. Henry Lig-gins resigns.
1 a June 17, 100d-Hazel Levingston resigns as secretary and Melody Dew is appointed to the position.
February J, 1997-The written resignation of Ivory Smith is submitted to board.
February 7, i007-Melanie Dew submits written resignation to board.
June 3, 1007-Reverend Liggins requests a paid position of employment in the corporation. When the board’s consultant advises that he cannot serve on the board and get a paid position, the board accepts the oral resignation of Reverend Liggins. John Andrews is elected President, and Wayne Bing, Vice President. Reverend Liggins informs the board that Ivory Smith, Melanie Dew and Lee Loche have resigned and he asks that Elowise Rabón, Arthur Hamlin and Alan Freeman be elected to the board. Elo-wise Rabón is elected Secretary/Treasurer. Reverend Liggins is appointed Chairman of the Advisory Board, an honorary position.
October 15, 1999-Wayne Bing is elected President and Arthur Hamlin, Vice President of the board.
Since October of 1999, the board members have been Wayne Bing, Arthur Hamlin, Hazel Levingston, Elowise Rabón and Alan Freeman. At the time of initial trial proceedings in state court in 2000, Reverend Liggins’ name remained on the signature card of one of Paradise’s checking accounts. Because Paradise apparently failed to file annual reports with the Louisiana Secretary of State for many years, the name of the registered agent was not formally changed from Reverend Liggins to Wayne Bing | ¿until February 11, 2000. Attached to that document was also a list of the above-noted board of directors (the Bing Board) as of that date. On February 17, 2000, Reverend Liggins filed a form with the Louisiana Secretary of State naming himself as the registered agent. He likewise named the Liggins Group as the board of directors. On April 12, 2000, Paradise sought to change the registered agent to Bing. Reverend Liggins countered with his own change to the registered agent form on April 18, 2000.
In February 2000, Reverend Liggins obtained a key and gained entry into the facility. He then occupied the premises and refused to leave.
Under the authority of the Bing Board, Paradise instituted the present suit to remove the Liggins Group from the facility on March 30, 2000. The Liggins Group answered the suit generally denying the allegations and separately filed dilatory and peremptory exceptions of lack of procedural capacity, no right of action and *567 improper joinder of parties.[1] The Liggins Group claimed that the suit should be dismissed on the grounds that the Bing Board, who were responsible for filing the suit, were not the legal board of directors for Paradise. Instead, the Liggins Group claimed to comprise the true board. The trial court referred these exceptions to the merits of the case.
After a protracted procedural history in state court for two years, Paradise, through the Liggins Group as the board of directors, the Liggins |fiGroup and two additional parties (still collectively referenced as “the Liggins Group”) instituted suit in the United States District Court for the Western District of Louisiana on March 25, 2002, against the Bing Board and others. The suit sought damages in the amount of 149 million dollars under the Federal Tort Claims Act for civil conspiracy based on allegations that the Bing Board acted without authority in transacting business with the USDA. Separately, the Liggins Group also sought a restraining order, injunction and stay of the state court proceedings. In a third petition in federal court, the Liggins Group filed a motion for quo warranto under La. C.C.P. art. 3901 seeking a determination of the true board of directors.[2] The following proceedings thereafter occurred in federal court:
December 2, 2002-United States District Court grants Bing Board motion to dismiss the above claims of the Liggins Group on the basis of prescription.
December k, 2002-United States District Court denies the Liggins Group requests for restraining order, injunction, stay order of state court proceedings and writ of quo warranto.
December 18, 2002-The Liggins Group appeals the dismissals to the United States Fifth Circuit Court of Appeal. (Relief is denied as frivolous in unpublished opinion on October 22, 2003.)
|fiOn June 9, 2003, the parties returned to state court for the completion of the eviction proceedings.[3] At that time, the court noted that Paradise had rested its case in the initial trial proceedings in state court before the federal suit began. Prior to the Liggins Group’s presentation of evidence, however, the court considered an exception of res judicata filed by Paradise. Therein, Paradise urged that the final judgments rendered in federal court were final as to the defendants’ Motion for Quo Warranto and Lis Pendens and all causes of action, claims and defenses asserted by the Liggins Group in the state court proceedings. After hearing arguments, the trial judge granted the exception, precluding the Liggins Group from presenting any further evidence in the eviction trial. On October 15, 2003, the trial court signed a written judgment granting Paradise’s exception of res judicata regarding the Writ of Quo Warranto, Motion for Lis Pendens and all causes of actions and defenses that *568 arise out of the same operative facts. The Liggins Group was also ordered to vacate Paradise and enjoined from interfering with Paradise’s possession and use of the premises, from acting or claiming to have authority to act on behalf of Paradise, and from filing any documents in the public records in the name of Paradise. The judgment further recognized the Bing Board as the board of directors of Paradise.
The Liggins Group perfected this appeal.
| ^Discussion
The Liggins Group have argued only two of their assigned errors on appeal.[4] They contend that the trial court erroneously referred peremptory and dilatory exceptions to the merits of the case and erred in granting plaintiffs’ exception of res judicata. The Liggins Group appears to argue that the trial court erroneously granted the res judicata exception and disallowed their presentation of a defense in this matter because the federal suit set forth a different cause of action than the subject eviction proceedings. We can find no merit to this claim and otherwise find the granting of the res judicata motion appropriate.
The preclusive effect of a prior federal court judgment is controlled by federal res judicata rules. Ellis v. Amex Life Ins., Co., 211 F.3d 935 (5th Cir.2000). Under federal law, res judicata is appropriate if: I) the parties to both actions are identical (or at least in privity); 2) the judgment in the first action is rendered by a court of competent jurisdiction; 3) the first action concluded with a final judgment on the merits; and 4) the same claim or cause of action is involved in both suits. Id. The phrase res judicata refers to the distinctive effects of a judgment separately characterized as claim preclusion and issue preclusion. Claim preclusion treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same claim or cause of action. Issue preclusion bars the re-litigation of issues actually litigated, and essential to a judgment, in a prior litigation between the same parties. 18 Charles Alan Wright, Arthur |SR. Miller & Edward H. Cooper, Federal Practice and Procedure § 4402 (2d ed.2002).
A transactional test is utilized to determine whether the two suits involve the same claim and the critical issue in that analysis is whether the plaintiff bases the two actions on the same nucleus of operative facts. Ellis v. Amex Life Ins. Co., supra.
 Res judicata ensures the finality of judgments and prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding. Brown v. Felsen, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). When a final judgment has been entered on the merits it is a finality as to the claim or demand in controversy, precluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand but as to any other admissible matter which might have been offered for that purpose. Nevada v. United States, 463 U.S. 110, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983).
According to the U.S. Fifth Circuit, for purposes of res judicata, dismissals for want of jurisdiction are not decisions on *569 the merits, while those on time limitations are. Ellis v. Amex Life Ins. Co., supra. Likewise, Louisiana courts have held that a dismissal based on a plea of prescription is a final judgment for purposes of res judicata. Centanni v. Ford Motor Co., 93-1133 (La.App. 3d Cir.5/4/94), 636 So.2d 1153, writ denied, 94-1949 (La.10/28/94), 644 So.2d 656 (La.1994); Guidry v. Bayly, Martin & Fay of Louisiana, Inc., 545 So.2d 567 (La.App. 4th Cir.1989), writ denied, 551 So.2d 638 (La.1989).
In Louisiana the requirements for res judicata ave much the same. In pertinent part, Louisiana law provides that if a judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment. La. R.S. 13:4231. The central inquiry is not whether the second action is based on the same cause or cause of action but whether the second action asserts a cause of action which arises out of the transaction or occurrence which was the subject matter of the first action. La. R.S. 13:4231, Official Revision Comment (a). Moreover, a judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to the judgment. La. R.S. 13:4231. The Louisiana res judi-cata law encompasses both claim and issue preclusion. Five N Company, L.L.C. v. Stewart, 02-0181 (La.App. 1st Cir.7/2/03), 850 So.2d 51.
Under federal law, it is the facts surrounding the transaction or occurrence which operate to constitute a cause of action for purposes of res judicata, not the legal theory upon which a litigant relies. Expert Elec., Inc. v. Levine, 554 F.2d 1227 (2d Cir.1977), cert. denied, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Therefore, defendants’ argument that the eviction suit constituted a separate cause of action than the federal tort suit for purposes of res judicata is misplaced. Here, the same set of operative | Tnfacts regarding which board had legal authority to act on behalf of Paradise formed the basis for both the state eviction suit and the Federal Tort Claim action. As such, both suits arose out of the same transaction or set of facts concerning whether Reverend Lig-gins resigned from the Paradise board of directors. Thus, the trial court correctly ruled that this element of res judicata was satisfied.
Res judicata also prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding as well as every matter which was offered and received to sustain or defeat the claim or demand and any other admissible matter which might have been offered for that purpose. Moreover, when two actions are pursued simultaneously, the first judgment to be entered is entitled to res judicata without regard to the order in which the two were commenced. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4404 (2d ed.2002). Therefore, despite the unique procedural posture of this case at the time of the res judicata ruling, the trial court could determine that the rendition of the federal suit judgment prior to the presentation of the Liggins Group’s defense barred the presentation of that defense by defendants.[5]
*570 The federal court exercised appropriate jurisdiction over the Liggins Group’s federal tort claims against the Bing Board. Thus, the federal court judgment was rendered in a court of competent jurisdiction. Likewise, the dismissal of the suit on grounds of prescription qualifies as a final judgment Inon the merits as does the order denying defendants request for a stay of the court proceedings, injunction and motion for quo warranto. Ellis v. Amex Life Ins. Co., supra; Centanni v. Ford Motor Co., supra; Guidry v. Bayly, Martin & Fay of Louisiana, Inc., supra.
Finally, the requirement of identical parties to both actions is also satisfied. Although the Bing Board members, who were defendants in the federal suit, were not technically “named” parties in the state court suit, they qualify as such through the doctrine of privity of interest, a well-established component of the federal law of res judicata. Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343 (2d Cir.1995). Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by a judgment, although not formally a party to the litigation. Id. If privity of interest between the parties exists, the “same parties” test is met. United States v. ITT Rayonier, Inc., 627 F.2d 996 (9th Cir. 1980). Such privity has been found to exist between a corporation and its sole and controlling shareholder. In re Gottheiner, 703 F.2d 1136 (9th Cir.1983). In Louisiana, a corporation can act only through its officers. La. R.S. 12:224; Jarrett v. Climatrol Corp., 185 So.2d 63 (La. App. 4th Cir.1966); Llano Del Rio Co. of Nevada v. Anderson-Post Hardwood Lumber Co., 79 F.Supp. 382 (W.D.La.1948), affirmed, 187 F.2d 235 (5th Cir.1951).
In this case, the Bing Board asserts its authority as directors by bringing the action in the name of Paradise. While Paradise, under the representation of the Bing Board, was not a party to the federal court action, |! gits suit in this state court seeks to validate the authority of the Bing Board, whose members were parties to the federal suit. On these grounds, we find that the final element of res judicata — identity of the parties — also existed.
The procedural record for this prolonged litigation in the state and federal courts is complicated and confusing, due in large part to the many pleadings filed by the Liggins Group who were unrepresented by counsel in both forums. Nevertheless, our review of the federal suit indicates that the Liggins Group, in their individual capacities, were party plaintiffs to that action against the Bing Board members. The corporation, Paradise, represented under the purported authority of the Liggins Group as board of directors, was also a party plaintiff. The claims of the alleged corporation were dismissed without prejudice by the federal court because the corporation was unrepresented by counsel. The Liggins Group’s individual claims in federal court had as the primary basis their assertions that their members were the authorized and existing board of directors and that they had been harmed under the Federal Tort Claims Act. It is that issue which the Bing Board/Paradise sought to preclude from further litigation at the trial court. The trial court agreed that the Liggins Group could not defend this eviction action on the basis of that issue since it felt that the further assertion of the Liggins Group’s authority as directors of Paradise was indeed precluded from further dispute by the federal court judgment.
There are three aspects of this res judi-cata ruling of particulate note. First, the *571 actual merits of the issue of the Liggins Group’s authority over Paradise was not reached by the federal court which dismissed the Liggins | ^Group’s claims on the basis of prescription. Nevertheless, the principle of issue preclusion and the recognition that a judgment of prescription is entitled to preclusive force convince us that the asserted defense is now barred.
Next, we have examined the effect of the alternative language utilized by the federal court dismissing the suit on the grounds of prescription with prejudice and on the grounds of standing without prejudice. The law is clear, as noted above, that a suit dismissal on time limitations is a final judgment, whereas, a dismissal for lack of standing is not a judgment on the merits. Cook v. Reno, 74 F.3d 97 (5th Cir.1996). The question that arises from the subject disposition is whether such alternative language made the federal judgment non-definitive so as to bar the application of res judicata in the state proceedings. Such would not appear to be the case based upon the holding of Williams v. Ward, 556 F.2d 1143 (2d Cir.1977). There, in addressing a similar circumstance, the court noted:
Third, we do not think the fact that the Eastern District court gave alternative procedural and substantive grounds for dismissal of Williams’ complaint should, in the circumstances of this ease, rob the substantive ground of res judicata effect as to any identical claim. Restatement of Judgments § 49 comment c, at p. 196 (1942) notes, in regard to a judgment given in favor of a defendant:
Where the judgment is based upon two alternative grounds, one on the merits and the other not on the merits, there is a decision on both grounds although either alone would have been sufficient to support the judgment, and a subsequent action based upon the same cause of action is ordinarily barred.
The remedy for challenging the alternative rulings was by appeal to the U.S. Fifth Circuit. See Cook v. Reno, supra. The Liggins Group | Upursued that appeal and the alternative judgment was not changed or reversed. Accordingly, from our review of this alternative federal judgment, the judgment on the merits regarding prescription may serve as a basis for res judicata in this case.
Third, while the assertion of res judicata is normally a defensive assertion via the exception of prescription under Louisiana procedure, the plaintiffs raising of res judicata or issue preclusion in this case to bar the assertions of the Liggins Group’s authority over the corporation was appropriate. See St. Paul Mercury Ins. Co. v. Williamson, 224 F.3d 425 (5th Cir. 2000). Louisiana first incorporated the principle of issue preclusion, otherwise known as collateral estoppel, into its res judicata law in 1991. Since that time the Louisiana jurisprudence has not addressed the propriety of the use of offensive issue preclusion as it now arises in the procedural posture of this case. Nevertheless, the federal law has fully approved of a plaintiffs reliance on res judicata to defeat a defensive position taken by a defendant or to establish a claim. 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4405 (2d ed.2002). While the plaintiff labeled the assertion for res judicata as an exception, the technical label of the motion is not controlling. If the judgment upon which the plaintiffs claim for res judicata had occurred before the commencement of trial (which was not the case in this unique setting), a motion to strike a defense or a *572 motion for partial summary judgment pursuant to La. C.C.P. art. 966 E would appear to be the appropriate Louisiana procedure for offensive issue preclusion.
1 ^Finally, the exceptions filed by the Liggins Group all related to the central dispute regarding the authority of the two competing groups for the directorship of the corporation. The summary procedure for eviction requires that such exceptions be referred to the merits pursuant to La. C.C.P. art. 2593. To the extent that plaintiffs additional claim sought ordinary relief, the trial court’s deferral of the exceptions to the merits was also appropriate under La. C.C.P. art. 929 B. The ultimate ruling of the trial court regarding res judi-cata also precludes the issues raised by the defendants’ exceptions. Therefore, the assignment of error regarding the trial court’s handling of the exceptions is without merit.

Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed at appellants’ costs.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.

. Charles Bradford, one of the named defendants, signed one of the pleadings as “accredited representative.” Bradford, a non-attorney, was the defendants' spokesman at most of the hearings.

. The writ of quo warranto is a procedure to direct an individual or corporation to show by what authority certain powers are exercised. Its purpose is to prevent usurpation of office or of powers. The Liggins Group attempted to utilize the state court procedure in the federal court and subsequently made allegations for quo warranto in the state district court in the present action.

.In three days of trial in April 2000, the above evidence regarding the board of directors and Reverend Liggins' activities had been presented by plaintiff before trial was stopped for a continuance. The trial of the eviction action never resumed before the institution of the federal court action.

. Pursuant to URCA Rule 2-12.4, issues raised but not argued or briefed are considered abandoned.

. Contrary to defendants’ argument, only a criminal defendant has a constitutional right to present a defense under La. Const. Art. 1 § 16.