PITMAN, J.
| defendants, Kenneth and Stephanie Leech (“the Leeches”), appeal the judgment of the trial court in favor of Plaintiff, Jerri Thurman (“Jerri”), which awarded her $12,616.80 in damages plus legal interest and $10,000 in attorney fees. They also appeal the trial court’s judgment declaring that a buy/sell agreement containing Jerri’s notarized signature was a fraudulent and forged document and declaring that Jerri and the Leeches each owned a one-half undivided interest in the property at issue in this case. They further appeal the trial court’s order that the subject property be partitioned by licitation. For the following reasons, we affirm the judgment of the trial court.

FACTS

Jerri, one-half owner of land and a mobile home located in Bossier Parish (“the property”), filed a petition for declaratory judgment, rescission, nullity, injunctive relief and partition. She named as defendants her former husband, Lonnie Thurman (“Lonnie”), and the Leeches, with whom Lonnie had entered into a “Lease to Purchase” agreement. Jerri alleged that her signature had been forged on two buy/ sell agreements and that the Leeches were in possession of the mobile home as a result of a fraudulent transaction. She further alleged that she had never consented to the Leeches taking possession of the property and that she was entitled to injunctive relief, ordering the Leeches to vacate the property because they were trespassing. Jerri also sought damages for “the cost of living for rent” from the date of the first trespassing to the present, mental anguish, loss of use of her property and attorney fees. She further sought a declaratory judgment pthat the buy/sell agreement was null and void and that it should be rescinded. In addition, she sought a declaration that she was a one-half owner of the property and asked for a partition to be ordered against Lonnie and/or the Leeches.
The Leeches filed an answer asserting that they should be declared the owners of the property pursuant to the buy/sell agreement, which they claim was entered into by both Lonnie and Jerri in 2001, when they took possession of the home and began making mortgage payments to the *714 mortgagee, Beneficial Mortgage Company (“Beneficial”). They claimed that Jerri, at the very least, acquiesced in the agreement entered into by Lonnie, who they claim was entitled to manage the community property. They alleged that Lonnie and Jerri should be required to convey all of their undivided interest in the property to them because they had made the agreed-upon payments to Beneficial. In lieu of that finding, they claimed damages were due them for the amount they paid to Beneficial while they had possession of the mobile home.
Lonnie was discharged in bankruptcy on October 31, 2011. In the case at bar, he filed a peremptory exception of discharge in bankruptcy and also included the discharge as an affirmative defense in his answer. In August 2012, Lonnie quit-claimed his interest in one-half of the property to the Leeches as a settlement just before trial. Jerri signed the quitclaim, specifically reserving her rights to her one-half of the property and dismissing Lonnie from her suit. The Leeches filed several exceptions, including prescription.
|sThe following facts were gleaned from the testimony presented at trial:
The property at issue in this case was purchased by Jerri and Lonnie during their marriage and was mortgaged to Beneficial. The couple divorced in 2001 and each was decreed to be a one-half owner of the property. Jerri was given the use of the home. She vacated the premises in 2002, but was still responsible, as was Lonnie, for the mortgage to Beneficial.
Since neither Lonnie nor Jerri could afford to pay the mortgage, Lonnie signed a “Lease to Purchase” agreement with the Leeches whereby they would make the mortgage payments of $525.70 per month to Beneficial in lieu of paying rent; and, after paying $40,874.88, they would be entitled to buy the property for the amount already paid on the mortgage. They were also to pay Lonnie $50 per month to cover the premium on the homeowner’s insurance with State Farm. At the same time that he signed the “Lease to Purchase,” Lonnie also signed a power of attorney allowing the Leeches to discuss the mortgage with the mortgage company. Lonnie did not inform Jerri about the arrangement he had with the Leeches. Between 2002 and 2008, the Leeches paid over $42,000 on the mortgage note.
Lonnie eventually told Jerri that the Leeches were renting the property, but he did not tell her about his agreement to sell them the property once they had paid the mortgage. Although Jerri did not want them living there, she apparently acquiesced in it and allowed the Leeches 14to occupy the property and pay the mortgage in her name from 2002 until 2006.
In 2006, Jerri decided she wanted to evict the Leeches. She filed an eviction proceeding in proper person in the Justice of the Peace Court, (“JOP Court”), but was denied relief when the Leeches produced a notarized buy/sell agreement apparently signed by the Thurmans and the Leeches.[1] At the trial of the eviction, *715 Jerri allegedly did not protest or testify that her signature was a forgery on the document. The JOP Court ruled that Jerri had not met her burden of proof for eviction.
In 2008, Lonnie filed a petition for bankruptcy, and his half of the property was placed in the hands of the bankruptcy trustee. The Chapter 18 bankruptcy “Plan Summary and Notice” included in the record states that the “Debtor abandons his rights, title and interest in the Mobile Home and land located @ 176 Jester Rd., Princeton, La.... and surrenders the Mobile Home and land in full satisfaction of debtor’s obligation owed to Beneficial.” [2] Kenneth Leech testified that, when Lonnie filed for bankruptcy, he contacted Beneficial and allegedly learned that it had | ^“written off the debt” because of the bankruptcy. He also testified that he and his wife stopped paying the Thur-mans’ monthly mortgage note in June or July 2008, claiming they did not know where the payments were going.
The trial court’s opinion states that Lonnie had entered into a “lease to purchase contract” with the Leeches which had been prepared by Stephanie Leech. It also found that the Leeches were to pay Beneficial the sum of $525.70 per month (the amount of the mortgage payment) and $50 per month to Lonnie for homeowner’s insurance to State Farm. The trial court further found that the amount of $525.70 was a “fair market value for any rental payment on the subject property.” It also noted that Jerri was unaware of the execution of the lease to purchase agreement until some years later when Lonnie informed her that the Leeches were renting the property and were paying the mortgage note in lieu of paying rent.
The trial court noted that it was not until 2006, when Jerri attempted to evict the Leeches from the property through the JOP Court, that she was presented with the buy/sell agreement she had allegedly signed. The trial court found it was at that time that Jerri became aware that the lease agreement was more than a simple lease agreement and that the Leeches were attempting to secure financing to purchase the property in accordance with the buy/sell agreement presented to the JOP Court.
The trial court stated that Jerri filed this action in a timely manner (November 29, 2010) and, therefore, found the Leeches’ exception of prescription to be without merit. Finding Jerri, Lonnie and Mr. Yates to be credible witnesses, the trial court found that the buy/sell agreement was a | ¿fraudulent and forged document. It further found Stephanie Leech was the person who prepared the buy/sell agreement and forged Jerri’s name to it, as well as that of the notary, Richard Yates. The trial court found Stephanie Leech to be without credibility and discounted any and all of her testimony. The trial court gave the Leeches credit for the mortgage payments made until July 2008 when they stopped paying on the mortgage as a result of Lonnie’s bankruptcy proceeding.
The trial court’s judgment found that the Leeches were owners of an undivided *716 one-half interest in and to the property and that Jerri was the owner of an undivided one-half interest in the property. A partition by licitation was ordered. The Leeches were decreed to owe Jerri the sum of $12,616.80, together with legal interest thereon from date of judicial demand until paid. The judgment specifically states: “These damages are a direct result of the forgery and fraud mentioned above.” The trial court also assessed the Leeches with attorney fees of $10,000 as an award for Jerri’s having to bring litigation to recover her interest in property of which the Leeches had attempted to deprive her through fraudulent activities. No injunctive relief was given.
The Leeches appeal the judgment of the trial court awarding Jerri damages for loss of fair rental value of her property, the award of attorney fees and the award of relief of partition by licitation.

\ .DISCUSSION

Prescription

The Leeches argue that the trial court erred in denying their peremptory exception of prescription because any claim Jerri had for rent, loss of rental income or trespass has long since prescribed. They argue that her cause of action for any claim of trespass prescribed one year • after she was aware of their occupation of the property, and any action for an arrearage of rent prescribed in three years. They further claim that the date upon which prescription should have begun to run was September 8, 2006, the date the JOP Court decreed Jerri could not evict them.
Jerri argues that her causes of action were in contract and in tort. She asserts that the trial court found she was unaware of the forged buy/sell agreement until the hearing at the JOP Court on September 8, 2006, and that she filed suit against the Leeches on November 29, 2010. Jerri points out that the trial court found she had filed suit within five years of learning of the existence of the buy/sell agreement and that her claims were timely pursuant to La. C.C. art. 2032, which concerns suits on relatively null contracts. She also argues that the Leeches committed a continuing trespass, clothed in forgery and fraud, up to August 1, 2012, when Lonnie quitclaimed his interest to them.
La. C.C. art. 2032 states an action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased or was discovered, as in the case of error or fraud. | ¡¡Nullity may be raised at any time as a defense against an action on a contract, even after the action for annulment has prescribed.
Jerri only became aware that the fraudulent buy/sell agreement existed in 2006. She filed this action challenging its validity within five years. Therefore, pursuant to La. C.C. art. 2032, Jerri’s causes of action had not prescribed, and this assignment of error is without merit.

The nullity of the buy/sell agreement

The Leeches argue that the trial court erred in declaring the buy/sell agreement null because Jerri tacitly ratified “her husband’s” agreement.[3] They further argue that they proved that the buy/ sell agreement between Lonnie and themselves was not totally fraudulent because it was valid as to “the husband.” This, they argue, made the document only relatively null, and the issue should have been *717 whether it was also valid as to Jerri because she had acquiesced or ratified the agreement by allowing them to continue to pay her mortgage note for over eight years.
Jerri contends that she never tacitly agreed to or ratified her ex-husband’s decision to allow the Leeches to possess her property, especially because he hid the fact from her that the Leeches expected to own the property after they had paid $40,000 to Beneficial. She argues that she attempted to have them evicted and would have taken other judicial action earlier had she been able to afford a lawyer. She also argues that the trial court found that the buy/sell agreement was null because Stephanie Leech forged both her name and that of the notary on the document. Therefore, 19there was no evidence presented to prove that Jerri acquiesced in, or ratified, any agreement between Lonnie and the Leeches to allow them to purchase her one-half undivided interest in the property.
La. C.C. art. 2369.2 states that each spouse owns an undivided one-half interest in former community property and its fruits and products. La. C.C. art. 2369.4 concerns the prohibition against alienation, encumbrance or lease of former community property and states as follows:
A spouse may not alienate, encumber, or lease former community property or his undivided community interest in that property without the concurrence of the other spouse, except as provided in the following Articles. In the absence of such concurrence, the alienation, encumbrance, or lease is a relative nullity.
An absolutely null contract, or a relatively null contract that has been declared null by the court, is deemed never to have existed, and the parties must be restored to the situation that existed before the contract was made. If it is impossible or impracticable to make restoration in kind, it may be made through an award of damages. La. C.C. art. 2033.
In the “Conventional Obligations or Contracts” section of the Louisiana Civil Code, fraud is defined as a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. La. C.C. art. 1953. Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence. La. C.C. art. 1957. The party against whom rescission is granted because of fraud is liable for damages and attorney fees. La. C.C. art. 1958.
|10The judgment of the trial court stated that it found that “the Buy Sell Agreement presented by the LEECHES is a fraudulent and forged document. The perpetrator of said fraud is/was STEPHANIE LEECH.” The trial court did not specify whether the agreement was an absolute nullity, a relative nullity, or if the agreement was rescinded. The trial court awarded damages and attorney fees, stating in the judgment: “These damages are a direct result of the forgery and fraud mentioned above.”
Lonnie leased the property to the Leeches without Jerri’s consent, although she accepted the benefit of their payment to the mortgage company for some time. In 2006, she expressed her displeasure with the rental arrangement and attempted to have the Leeches evicted, and only then became aware of the buy/sell agreement between her ex-husband and the Leeches.
While Jerri may have agreed to lease the property to the Leeches, she certainly did not agree, acquiesce or ratify Lonnie’s agreement to let them lease with an option to purchase for monies paid to extinguish the mortgage. Lonnie had no authority to *718 alienate or encumber Jerri’s one-half of the former community property. The trial court correctly found that the buy/sell agreement was fraudulent in that it contained the forged signatures of Jerri and the notary; thus, we find that Jerri was entitled to invoke La. C.C. art. 1958 and to be awarded damages and attorney fees as a result of the fraud perpetrated upon her by the Leeches. Accordingly, these assignments of error are without merit.

\nIssues concerning the JOP Court hearing

The Leeches argue that the trial court erred with respect to their exception of res judicata as to the judgment of the JOP Court and the JOP Court’s testimony at the trial at issue in this case. They assert that Jerri is estopped from pursuing her claim for damages and trespass as a result of the determination by the JOP Court in 2006 in the eviction proceeding, arguing that the law of the case doctrine applies and that, under the JOP Court’s judgment, they are possessing the property under color of law. Further, they argue that the district court cannot reverse a final judgment of the JOP Court after all appeal delays have run. The Leeches also argue that the trial court erred in ignoring the testimony of the JOP and in cutting short his testimony.
Jerri argues that the hearing before the JOP Court did not result in a final judgment applicable to anything other than the matter before it,' i.e., the eviction of the Leeches from her property. She asserts that the JOP Court had no jurisdiction regarding title to immovable property and she could not have brought her claim for anything other than eviction in that court. She further argues that the Leeches cannot raise estoppel as a defense because that defense requires “clean hands,” which is a requirement the Leeches cannot meet because Stephanie Leech forged her signature and the notary’s on the buy/sell agreement. Last, she argues that the trial court’s refusal to consider the testimony of the JOP Court at the trial in the instant case was not error because that hearing was not recorded or transcribed.
La. R.S. 13:4231 concerns res judicata and states in pertinent part that, if a judgment is in favor of the defendant, all causes of action existing at | ^the time of the final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action. A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, -with respect to any issue actually litigated and determined if its determination was essential to that judgment.
Under a plain reading of La. R.S. 13:4231, the judgment of the JOP Court refusing to evict the Leeches cannot be deemed to be a final judgment to which the defenses of res judicata or law of the case apply. The only decision made by the JOP Court was that the Leeches should not be evicted at that point because Jem failed to meet her burden of proof. Therefore, the assignments of error relating to the JOP Court hearing are without merit.

Evidentiary matters and the finding that Stephanie Leech committed forgery

The Leeches argue that the trial court erred when it allowed evidence of past charges which had been made against Stephanie, but dismissed by the district attorney in a plea bargain agreement. They also argue that the trial court erred when it found that it was Stephanie who had forged Jerri’s name (and the name of the notary public) to the buy/sell agreement.
Jerri argues that the trial court originally refused to allow into evidence the testi *719 mony concerning Stephanie’s previous charges; however, the trial court admitted the testimony into evidence when Stephanie prevaricated on the stand about why she pled guilty to a felony. Jerri contends that the earlier charges became relevant when Stephanie “opened the door” to the questioning.
| iaThe Leeches failed to brief the issue of the admission into evidence of the former charges against Stephanie. Pursuant to URCA Rule 2-12.4, issues raised but not argued or briefed are considered abandoned. Paradise Village Children’s Home, Inc. v. Liggins, 38,926 (La.App.2d Cir.10/13/04), 886 So.2d 562, writ denied, 05-0118 (La.2/4/05), 893 So.2d 884.
The trial court’s opinion clearly discusses the reasons why it found Stephanie Leech to be without credibility and why it discounted any and all of her testimony. With regard to her prior criminal record, the trial court stated: “Mrs. Leech considered her self [sic] a victim and attempted to discount her two prior felony convictions.” The trial court noted that Stephanie had prepared the buy/sell agreement and that her story regarding the execution of the document was inconsistent with the more credible positions presented by the other witnesses.
Under the manifest error standard, the reviewing court does not determine whether the trier of fact was right or wrong, but whether its conclusion was a reasonable one. Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880 (La.1993). Findings based on credibility determinations are entitled to great deference. Foley v. Entergy Louisiana, Inc., 06-0983 (La.11/29/06), 946 So.2d 144. Where conflict exists in the testimony, reasonable evaluations of credibility and inferences of fact should not be disturbed on review. Stobart, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989). If the trial court’s findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those findings even though convinced that, had it been sitting as the trier of fact, it would 114have weighed the evidence differently. Davidson v. Glenwood Resolution Authority, Inc., 47,640 (La.App.2d Cir.1/23/13), 108 So.3d 345; Brown Radiator and Frame v. Kidd, 44,354 (La.App.2d Cir.6/24/09), 13 So.3d 1244.
Based on a review of the record in its entirety, we And that the trial court had a reasonable basis for finding that Stephanie was the perpetrator of the forgery and fraud and, therefore, find no error in that ruling. Accordingly, these assignments of error are without merit.

Damages

The Leeches argue that the trial court erred in awarding damages of $12,616.80 to Jerri for loss of “fair rental value” of her home because she had never presented evidence to establish the amount of damages due.[4] They claim that the trial court’s decision to use the $525.70 per month figure paid on the mortgage as the fair rental value was a speculative guess. They argue that lost rent is not an item of general damages because it is a specific monetary amount susceptible to mathematical calculation which cannot be rendered without some evidentiary basis.
The Leeches also pose an argument that Jerri was not entitled to the damages awarded because she would not have received any rental income from the proper *720 ty after her ex-husband placed “her” property in bankruptcy. The Leeches complain that the trial court calculated the damages owed from the point at which Lonnie filed for bankruptcy because that was when they [ ^stopped paying the mortgage note to Beneficial. They further argue that they ceased paying the mortgage note at that time because they received notice of the bankruptcy and “realized they were not supposed to pay Beneficial anymore.” They claim that, when the property was placed in the hands of the bankruptcy trustee and subject to his control, Jerri could not have rented her property to anyone and, therefore, did not lose any rent or rental income she otherwise would have received.
The Leeches also argue that the trial court erred in finding the buy/sell agreement null and in finding damages “for fraud and forgery” because the elements for awarding damages for forgery, i.e., (1) a signature made without permission which (2) causes real harm or damage to a party, have not been proven. The Leeches assert that the sole purpose of the buy/sell agreement was to enable the Leeches to process a loan with a new mortgage company and pay off the Thurmans’ mortgage balance. Therefore, they claim the buy/ sell agreement benefited Jerri and did not harm her.
Jerri argues that the “Lease to Purchase” agreement introduced at trial indicates that the Leeches agreed to pay $525.70 per month for the privilege of living in the mobile home. Therefore, that is the fair market rental value of the property, and that amount is the figure to be used to measure her damages for loss of use.
In McGuire v. Kelly, 2012 WL 602366 (La.App.1st Cir.1/30/12), writ denied, 12-0685 (La.5/4/12), 88 So.3d 465 and 12-0702 (La.5/4/12), 88 So.3d 467, an unreported case, Kelly, a Louisiana co-owner of a mul-ti-million dollar condominium in Florida, forged the names of his other cojowners,16 McGuire and Henrikson, on a quitclaim deed and had a Louisiana attorney notarize the document even though the notary had not seen McGuire and Henrikson sign it. Kelly recorded the quitclaim in the Florida court’s records and, as sole owner of the condo, obtained a mortgage of approximately $400,000 greater than the payoff on the other two mortgages previously placed on the property. McGuire and Henrikson sued Kelly and the notary, among others.
The Kelly trial court dismissed all of the plaintiffs’ claims, concluding that a recorded, forged deed is a nullity and cannot actually transfer ownership and that plaintiffs had not instituted legal proceedings in Florida to declare the deed null or to correct the public record, had not shown “any ascertainable damage” and had no basis for recovery in Louisiana. It further stated that the plaintiffs had not suffered any discernible monetary loss, had not suffered any mental distress and “were never denied use or enjoyment of the property.” On appeal, the judgment was affirmed in part and reversed in part, the appellate court finding manifest error in the ruling that the plaintiffs were not entitled to damages for the theft of their property through the fraudulent and forged document. The appellate court awarded general damages for mental anguish due to fraudulent interference with property rights.
The term “damages” refers to pecuniary compensation, recompense or satisfaction for an injury sustained. The most common type of damages in the delictual context is compensatory damages. Wainwright v. Fontenot, 00-0492 (La.10/17/00), 774 So.2d 70. Generally, compensatory damages are 117awarded on the basis of the *721 loss suffered and are designed to replace the loss caused by the wrong or injury. Stated another way, the purpose of a compensatory damage award is to restore the injured party, as closely as possible, to the position he would have been in had the accident or incident never occurred. Sharp v. Daigre, 545 So.2d 1063 (La.App. 1st Cir.1989), writ granted, 550 So.2d 640 (La.1989) and aff'd, 555 So.2d 1361 (La.1990); Great American Surplus Lines Insurance Co. v. Bass, 486 So.2d 789 (La.App. 1st Cir.1986), writ denied, 489 So.2d 245 (La.1986).
It is well-settled that a judge or jury is given great discretion in its assessment of quantum, both general and special damages. La. C.C. art. 2324.1 provides: “In the assessment of damages in eases of offenses, quasi offenses, and quasi contracts, much discretion must be left to the judge or jury.” Furthermore, the assessment of quantum, or the appropriate amount of damages, by a trial judge or jury is a determination of fact, one entitled to great deference on review. Guillory v. Lee, 09-0075 (La.6/26/09), 16 So.3d 1104, citing Wainwright v. Fontenot, supra.
The Leeches’ arguments defy the reality of the situation. The bottom line is that the Leeches forged a document for their own benefit, and to Jerri’s detriment, and then tried to use it to deprive Jerri of her rights. The Leeches’ argument that Jerri could not have leased the property after Lonnie’s one-half interest was placed in the hands of the bankruptcy trustee is without merit. They, themselves, were living in the home and were supposed to be paying for the privilege. As the true owner of one-half of the property, Jerri was deprived of exercising her rights of ownership because |1sthe Leeches were occupying the property. Jerri’s damages result from the harm caused to her by deprivation of her rights as a property owner and her relationship to the property.
For the foregoing reasons, we find that Jerri suffered interference and impingement of her rights as owner of real property caused by the Leeches’ tortious acts. We note that it does not matter whether the trial court intended the damages to be general or special; its method of determining the amount of damages awarded was reasonable under the circumstances. Clearly, damages were due for the Leeches’ tortious interference with Jerri’s property rights. Therefore, we find that the trial court’s award of damages in the sum of $12,616.80, representing one-half of the fair rental value of $525.70/month due and owing as rent for the property from the date the Leeches stopped paying that amount to the mortgage company in 2008 until the date Lonnie quitclaimed his interest to the Leeches in August 2012, together with legal interest from the date of judicial demand, to be a reasonable award within the trial court’s discretion. Accordingly, the assignments of error relative to the award of damages are without merit.

Attorney fees

The Leeches argue that the trial court erred in awarding Jerri attorney fees of $10,000 “for (Jerri) having to bring this litigation to recover her interest in property which the Leeches had attempted to deprive her of through their fraudulent activities.” The Leeches claim that Jerri never lost title to her property and that attorney fees may be awarded only where specified by law. They argue that La. C.C. art. 1958 is the only statute | ^providing for attorney fees in a “contract” dispute; and, in this case, the trial court found that Jerri had not formed a contract. They argue that there was no rescission of her contract because there was no contract. Further, the Leeches claim that no evidence was presented to *722 support the amount of attorney fees awarded; and, as attorney fees are not general damages, some specific evidence is required.[5]
Jerri argues that she lost her possessory interest in her property, and she lost it by virtue of the fraudulent and forged buy/sell agreement presented to the JOP Court in 2006. Therefore, she argues, attorney fees were properly awarded under La. C.C. art. 1958.
Jerri further argues that it is clear the trial court did not render its decision based on the attorney fee affidavit submitted because the affidavit claimed $18,900 of attorney fees were due prior to trial. The trial court deemed that $10,000 was a reasonable award. Jerri contends that the trial court, in its discretion, based the award on what it saw, the record and the sheer volume of work created by the defense in the case.
La. C.C. art. 1958, cited earlier in this opinion, provides that the party against whom rescission is granted because of fraud in the confection of the contract is liable for damages and attorney fees. As to the sums awarded for attorney fees, the trial court is vested with great discretion in arriving at the award. The exercise of this discretion will not be reversed on appeal without a showing of clear abuse of discretion. Hickman v. Bates, 39,178 (La.App.2d Cir.12/15/04), 889 So.2d 1249. When determining the amount of attorney fees to be awarded, the court should consider the following factors: (1) the ultimate result obtained; (2) the responsibility incurred; (3) the importance of the litigation; (4) amount of money involved; (5) extent and character of the work performed; (6) legal knowledge, attainment and skill of the attorneys; (7) number of appearances made; (8) intricacies of the facts involved; (9) diligence and skill of counsel; and (10) the court’s own knowledge. While it is preferable to take evidence on an attorney fee issue, it is not essential where the court is able to observe counsel’s efforts and make a determination of an attorney fee award deemed reasonable under the circumstances presented. Custom-Bilt Cabinet & Supply, Inc. v. Quality Built Cabinets, Inc., 32,441 (La.App.2d Cir.12/8/99), 748 So.2d 594.
Since the Leeches were relying on the forged buy/sell agreement in their refusal to allow Jerri to repossess her property, Jerri was forced to file suit to have the agreement rescinded. While the judgment did not specifically state that the buy/sell agreement was rescinded, the trial court found that the document was fraudulent and a forgery. When proof is provided that a fraud has occurred, as in this case, La. C.C. art. 1958 provides that rescission is the proper remedy, and the person against whom rescission is granted is liable for damages and attorney fees. For these reasons, the award of attorney fees was proper under these circumstances.
The trial court deemed $10,000 to be a reasonable attorney fee based on its familiarity with the case, the degree of skill necessary to litigate the action and its own knowledge. The trial court was able to observe Jerri’s |2i counsel’s efforts and made the determination of what it believed was a reasonáble fee. Based on the foregoing, we find no error in the award of attorney fees. Therefore, this assignment of error is without merit.

Partition by licitation

The Leeches argue that the trial court erred in ordering partition by licita *723 tion of the property, but cite no law in support of their legal assertions and rely solely on facts which they deem to justify their position. They argue that, at the time the suit was filed in 2010, Jerri sued Lonnie for partition by licitation because he was the owner of the other one-half of the property, pointing out that they were not owners of the property. They claim that, as a matter of law, Jerri had no cause of action for partition against them; and, even after the quitclaim deed was confect-ed, she failed to amend her petition seeking a partition with them. They further argue that they filed an exception of no cause of action on this point, but it was erroneously overruled. They assert that the quitclaim deed could not cure the error made by the trial court in overruling an exception of no cause against them for partition. They also claim that it is in no one’s best interest that the property be partitioned by licitation because there is still a large mortgage outstanding on the property, and Beneficial will simply receive the entire proceeds of the sale because of its secured status.
The Leeches also argue, without any law in support, that it is an error of law to order a partition when an undivided one-half interest of the property is still held or controlled by the trustee in bankruptcy. They claim there is no evidence, despite Lonnie’s discharge in bankruptcy, which 122showed that Lonnie’s title ever “came out of’ the trustee in bankruptcy to any other party. Therefore, they claim, the title of Lonnie’s interest in the property “remains lodged with the trustee in bankruptcy” and the trial court cannot order partition of property held in the control of a bankruptcy trustee.
Jerri argues that the Leeches, as defendants in the suit, had notice from the very beginning that this was a suit for a partition. She contends that this is not a case of an innocent third party acquiring rights of an ancestor in title and then being blind-sided by a partition suit. She states that, when she agreed to sign the quitclaim deed by which Lonnie gave whatever rights he had to the Leeches, she reserved all of her rights to her one-half of the property, and the Leeches agreed to accept Lonnie’s interest subject to the lawsuit.
No one may be compelled to hold a thing in indivisión with another unless the contrary has been provided by law or juridical act. Any co-owner has a right to demand partition of a thing held in indivi-sión. La. C.C. art. 807. When the thing held in indivisión is not susceptible to partition in kind, the court shall decree a partition by licitation or by private sale and the proceeds shall be distributed to the co-owners in proportion to their shares. La. C.C. art. 811.
When a thing held in indivisión is burdened with a real right, such as a mortgage, the partition, whether in kind or by licitation, is without effect on the real right. La. C.C. art. 812. Despite the partition, the real right continues to exist and to burden the property. When a thing is partitioned by | ^licitation, a mortgage, lien or privilege that burdens the share of a co-owner attaches to his share of the proceeds of the sale. La. C.C. art. 815.
La. C.C. art. 2502 describes the effects of an act of the kind called a quitclaim deed at common law. It provides that a person may transfer to another whatever rights to a thing he may then have, without warranting the existence of any such rights. Comment (c) to the article states that, at common law, the distinguishing factor of a quitclaim deed is that it is an instrument that purports to convey nothing more than the interest or estate of the grantor, if any he has, at the time of the *724 conveyance, rather than the property itself.[6]
The Leeches’ arguments with regard to partition are disingenuous at best. Although they claim that Jerri had no cause of action against them for partition when she filed her suit in 2010, now that they have been declared by the trial court to be owners of one-half of the property, they claim that only the bankruptcy trustee could have been sued for partition of the property. They are willing to accept the benefits of Lonnie’s quitclaim of whatever interest he had in one-half the property, but disregard the fact that the interest might be nothing if the final bankruptcy plan indicates that Beneficial is the owner of Lonnie’s one-half of the property. Their arguments are red herrings and are without merit.
124At the time Jerri filed suit, she prayed for partition from Lonnie and/or from the Leeches. Jerri cannot be compelled to own the property in indivisión, and she is entitled to seek partition by licitation from any other co-owner. For these reasons, we find that the assignment of error concerning the order for partition is without merit.

CONCLUSION

For the foregoing reasons, the judgment of the trial court in favor of Plaintiff, Jerri Thurman, and against Defendants, Kenneth and Stephanie Leech, finding the buy/ sell agreement to be a forgery committed by Stephanie Leech and awarding Jerri Thurman $12,616.80 for damages, plus legal interest, and $10,000 for attorney fees, and ordering partition by licitation of the subject property, is affirmed. Costs of this appeal are assessed to Defendants, Kenneth and Stephanie Leech.
AFFIRMED.

. Jerri claims that her signature on the buy/ sell agreement is a forgery and that, in fact, her name is even misspelled on the document. There are actually two buy/sell agreements; both have Jerri's name signed on the documents, and both are notarized by Richard Yates. Mr. Yates denied that he ever notarized either document and claims that his signature is also a forgery perpetrated by Stephanie Leech. Neither document is dated. Lonnie testified that he signed the buy/sell agreement presented at the hearing before the JOP Court in 2006 at Stephanie Leech’s place of business located behind the notary’s office. Lonnie stated that neither Jerri nor the notary was present when he signed the document on the hood of a car and that Kenneth Leech’s signature was already on the document, *715 though he was not present either. Lonnie testified that he told Stephanie Leech that she would have to obtain Jerri's signature on the document.

. The "Plan Summary and Notice” submitted into the record specifically states, "This four page document is only a summary and a portion of the complete plan. In all instances the complete plan and terms and conditions set forth therein shall be controlling.” Therefore, this court recognizes that the "Plan Summary and Notice" is not the complete and final document indicating what Lonnie's Chapter 13 Plan provided upon his discharge on October 31, 2011.

. The Thurmans were divorced at the time the first buy/sell agreement was allegedly confect-ed.

. The trial court reached this figure for damages by multiplying $525.70 by 48 (the number of months between the time the Leeches stopped paying the mortgage note in 2008 until August 2012 when Lonnie quitclaimed his interest in the property to them) and then dividing the number in half.

. Jerri's attorney offered an affidavit to show time spent on the case. The Leeches' attorney objected, and the objection was sustained. The trial judge stated that the affidavit was not part of the evidence, but noted that the affidavit was "there for identification.”

. The propriety of the trial court's decision that the Leeches are one-half owners of the subject property has not been raised as error in this appeal. Considering the fact that only the bankruptcy "Plan Summary and Notice” has been provided in the record, stating that Lonnie "abandons his rights, title and interest in the Mobile Home and land located @ 176 Jester Rd., Princeton, La. ... and surrenders the Mobile Home and land in full satisfaction of debtor’s obligation owed to Beneficial,” we make no findings regarding what rights, title or interest Lonnie had left to quitclaim to the Leeches.